IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| v. | * | Criminal No.  RDB-19-0144 |
| | * | |
| **CORTEZ WEAVER,** | * | |
| | * | |
| a/k/a Corty, | * | |
| | * | |
| Defendant. | * | |
| | ****** | |

## GOVERNMENT'S REPLY

In their reply filed yesterday, defense counsel faulted the government for "mak[ing] no effort" to respond to the argument that adding five years to Weaver's sentence will not enhance public safety or deter crime. ECF 159, at 3 & n.7; *see also* ECF 155, at 32–37. We submit this reply to clarify our position: this argument is not only wrong, but it is dangerous.

In support of their position, defense counsel cite a publication by the U.S. Sentencing Commission for the proposition that "detainees released over the age of 50 have the lowest reincarceration rate compared to all other violent offenders." ECF 155, at 32. Remarkably, however, they omit the Sentencing Commission's more important conclusion—that violent offenders recidivate at high rates in every age bracket. The Commission analyzed 10,004 violent offenders and 15,427 non-violent offenders who were released in calendar year 2005. It found:

> Among violent prior offenders, recidivism rates remained relatively high across age groups and do not decline as rapidly as the rates for non-violent offenders. The recidivism rates for violent prior offenders released between age 41 and 50 and those over 50 is more than double the rate for non-violent offenders in those age groups. **For offenders age 41 to 50 at release, the recidivism rate is more than 30 percentage points higher for violent prior offenders (60.8%) compared to non-violent offenders (29.8%).** Over one-third (37.1%) of violent prior offenders released after the age of 50 recidivated—more than twice the rate for non-violent offenders released after age 50 (15.2%).

U.S. Sentencing Commission, *Recidivism Among Violent Offenders* (Jan. 2019), *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190124_Recidivism_Violence.pdf, at 38 (emphasis added).

Not only are violent offenders more likely than non-violent offenders to recidivate—even in the higher age brackets—but they "recidivated for more serious crimes than non-violent offenders." *Id.* at 3. Among the violent offenders who recidivated, the most common new charge was assault, constituting 28.4%, and for a startling 11.3%, it was homicide, rape, or robbery. *Id.* at 13.

If Weaver were sentenced to a mere 25 years, he would be released in his late 40s.[1] That means he would be in the category of offenders with a roughly **61% chance** of recidivating. ***Those are losing odds***. And in the likely scenario in which he does recidivate, there is a nearly **40% chance** that he would commit another violent crime such as assault, homicide, rape, or robbery. The Court should not be willing to gamble with the public's safety in this way.

Defense counsel also rely heavily on research by Daniel Nagin, which is summarized in various other articles they cite.[2] Nagin arrives at two main conclusions: (1) that certainty of punishment has a greater deterrent effect than severity of punishment, and (2) that incarceration may increase the likelihood of future criminal involvement (*i.e.*, because prisons may be schools for learning to commit crimes, or because defendants are stigmatized upon release). Neither conclusion is particularly helpful here. The first says nothing about the *degree* to which severity of punishment enhances deterrence, only its *relative* efficacy. The second, Nagin admits, is tentative. Moreover, it is not the *length* of the sentence that is associated with increased recidivism, but the *fact* of incarceration.[3] Finally, Nagin deals only with *specific deterrence* (the impact of incarceration on the specific defendant), not *general deterrence* (the impact of the threat of incarceration on the public at large).

Defense counsel fail to acknowledge the many scholarly articles that have concluded that longer sentences do have a greater deterrent effect. For instance, renowned economists Daniel

---

[1] Weaver will get credit for time served since his arrest on March 7, 2019, when he was 27 years old. If he receives the full benefit of good time credit, he will serve only 21.25 years behind bars, and will be released at age 48. By contrast, if he is sentenced to 30 years, he will be 52 years old when he is released (assuming maximum good time credit).

[2] For instance, defense counsel grossly misrepresent the National Institute of Justice publication cited in their brief, which they claim constitutes the Department of Justice's "own guidance." ECF 155, at 34. But the NIJ publication merely summarizes the research of Nagin and other scholars, and expressly states that "[f]indings and conclusions of the research reported here are those of the authors and do not necessarily reflect the official position or policies of the U.S. Department of Justice." *See* National Institute of Justice, Five Things About Deterrence (May 2016), *available at* https://www.ncjrs.gov/pdffiles1/nij/247350.pdf.

[3] Defense counsel misleadingly cite the article by Valerie Wright for the proposition that "longer sentences have actually been found to increase recidivism." ECF 155, at 24. Wright merely cites a study finding that offenders who spent an average of 30 months in prison were 3% more likely to recidivate than offenders who spent an average of only 12.9 months in prison. *See* Valerie Wright, The Sentencing Project, *Deterrence in Criminal Justice: Evaluating Certainty Versus Severity of Punishment* (Nov. 2010), at 6. That longer prison sentences were *correlated* with a greater rate of recidivism does not mean they *caused* a greater rate of recidivism. The more likely explanation—consistent with the U.S. Sentencing Commission data discussed above—is that the defendants who committed more serious crimes were more likely *both* to receive longer sentences *and* to reoffend. In other words, the factor driving recidivism is the type of offender, not the length of the sentence.

Kessler and Steven Levitt determined that sentence enhancements reduce crime by increasing general deterrence, independent from their incapacitative effect. *See* Kessler, D. & Levitt, S., *Using Sentence Enhancements to Distinguish Between Deterrence and Incapacitation*, The Journal of Law & Economics, April 1999, *available at* https://www.jstor.org/stable/10.1086/467428?seq=1#metadata_info_tab_contents. The economists looked at California's Proposition 8, a popular referendum passed in 1982 that increased the scope and severity of repeat-offender enhancements for certain types of crime, including homicide. The authors found that Proposition 8 yielded a 4% decline in crime attributable to deterrence in the year following its enactment, an 8% decline in the three years after passage, and a 20% decline within five to seven years. Another criminological study pooled city-specific results to obtain a combined estimate of the impact of mandatory sentence enhancements for gun crimes, and found that "the mandatory sentencing laws substantially reduced the number of homicides." *See* McDowall, D., et al., A comparative study of the preventive effects of mandatory sentencing laws for gun crimes, *Journal of Criminal Law and Criminology* (1992).

Indeed, just recently, the U.S. Sentencing Commission published a study concluding that there is "an inverse relationship between length of incarceration and recidivism for offenders serving more than 60 months incarceration." *See* U.S. Sentencing Commission, *Length of Incarceration and Recidivism*, Apr. 2020, *available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2020/20200429_Recidivism-SentLength.pdf, at 30. Defense counsel ignore these important data-driven analyses, cherry-picking a few articles and distorting their conclusions.

There is one thing the defense gets right: violence in Baltimore has skyrocketed in recent years. *See* ECF 155, at 35 & n.31. The homicide rate dramatically increased in 2015 after the death of Freddie Gray, which spawned riots and a crime wave. The city recorded 344 homicides in 2015, the most in any year since 1993, when the population was 100,000 higher. *See* The Baltimore Sun, Deadliest year in Baltimore history ends with 344 homicides, *available at* https://www.baltimoresun.com/maryland/baltimore-city/bs-md-ci-deadliest-year-20160101-story.html. Homicides climbed to 348 in 2019, resulting in the highest per capita murder rate in Baltimore's history—roughly 59 per 100,000 people, almost six times the national average. *See* The Baltimore Sun, 2019 closes with 348 homicides in Baltimore, second-deadliest year on record, *available at* https://www.baltimoresun.com/news/crime/bs-md-ci-cr-2019-homicide-final-count-20200101-jnauuumukbdh3edsyypspsm3he-story.html; *see also* The Baltimore Sun, Baltimore Homicides, available at https://homicides.news.baltimoresun.com/.

The defense draws exactly the wrong conclusion from this surge in violent crime. They argue, essentially, this: violence in Baltimore is increasing notwithstanding the imposition of lengthy sentences; therefore, we should instead give more lenient treatment to violent offenders. That argument is not only logically unsound, but if accepted, it will have grave consequences.

First, the defense points to no evidence that criminal sentences have been increasing during the time period that violent crime has been increasing. To the contrary, the U.S. Sentencing Commission's reports published each year reveal that the average length of imprisonment for

3

federal crimes in Maryland generally trended downward in the decade prior to the 2019 spike in homicides—from 96 months in fiscal year 2009 to 65 months in fiscal year 2018 (with some zigs and zags along the way).  *See* U.S. Sentencing Commission, Federal Sentencing Statistics, 2009 to 2018, *available at* https://www.ussc.gov/topic/data-reports#0.

Second, even if it were true that criminal sentences and violent crime were both increasing during the relevant time period, it would be foolish to assume that the former was causing the latter.  There are myriad other factors that could be, and likely are, driving the recent increase in crime—such as higher poverty levels, a reduced police force, a lower arrest rate, declining murder clearance rates, greater mistrust of law enforcement, an intensifying "no-snitch" culture, and diminished respect for an overburdened state criminal justice system where violent crime cases too often fall apart when frightened witnesses fail to show up, or are otherwise dismissed at the eleventh hour.

Regardless, it should be obvious that the answer to skyrocketing violence is not to start lopping years off sentences for cold-blooded executions like this one.  The answer is to send a message that, at least in the federal system, enough is enough.  The outrage the community feels is appropriate. Courts will not shy away from holding killers accountable by sending them away to prison for the majority of their adult lives.

The defense posits that we cannot "incarcerate our way out of the problem of street-level gang violence."  ECF 155, at 35.  We harbor no illusion that prison alone will cure the pandemic of violence in the city.  But there is no serious Baltimore crime plan that does not recognize that targeting violent offenders and imposing harsh sentences on the city's worst trigger-pullers is an important part of the solution.  What we are recommending—holding a repeat violent offender guilty of first-degree murder accountable with a 30-year sentence—is not in any tension with other front-end reforms in the areas of education, poverty, and public health.  But those solutions are beyond the scope of this sentencing.  Nothing the Court does on Tuesday will fix the ways in which Weaver was shortchanged as a child.  But a 30-year sentence *will* promote respect for the law and deter others from engaging in the same criminal activity.

It may be true that some low-profile cases do little to advance the goal of general deterrence because the sentence is not publicized, and the community at large never learns about it.  That is *not* the situation here.  The community *is* watching this case.  *See* Baltimore Sun, http://www.baltimoresun.com/news/crime/bs-md-ci-cr-cortez-weaver-finney-murder-20190905-fy2bvym7uzhxzhwzuoymtcpb24-story.html (reporting on Weaver's guilty plea); https://www.stattorney.org/media-center/press-releases/1555-assailant-in-gas-station-shootout-faces-a-triple-life-sentence (reporting on Torrence's conviction).  The residents of the Baltimore Hilton neighborhood are fed up with the violence that has plagued their community.  They are tired of having to worry that they might be struck by stray bullets when they walk to the local gas station on a sunny summer day.  They are outraged by what Weaver did.  And a 30-year sentence is necessary to send the message that the federal courts hear them—and this kind of drug-related violence will not be tolerated.

It is not a coincidence that the Mayor of Baltimore announced his crime reduction plan during a press conference at the intersection of Baltimore Street and Hilton Avenue, in front of the very gas station where the defendant murdered Mitch Finney. *See* https://foxbaltimore.com/news/city-in-crisis/city-council-president-announces-crime-plan. In support of his crime reduction plan, the Mayor explained,

> When we were reducing violence to its lowest levels in the history of Baltimore City, we had an approach of focusing on violent offenders and removing those people from our neighborhoods. **We know it works**.

*Id.* That is precisely what we ask the Court to do here. We ask the Court to remove a violent criminal—a murderer—from a neighborhood engulfed by bloodshed. We ask the Court to say, on behalf of the community, "Enough." We ask the Court to sentence this defendant to 30 years. On the facts of this case, anything less would be unjust.

> Respectfully submitted,
>
> Robert K. Hur
> United States Attorney
>
> By:  _____/s/_____
> Christina A. Hoffman
> Peter J. Martinez
> Assistant United States Attorneys
> 36 S. Charles St., Fourth Floor
> Baltimore, Maryland 21201

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on January 30, 2021, a copy of the foregoing Government's Reply was served electronically to the Clerk of the United States District Court using CM/ECF, and sent via e-mail to:

  Brendan Hurson and Maggie Grace,
  Counsel for the Defendant

                  _____/s/_____
                     Christina A. Hoffman