# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO.   RDB-19-144** |
| v. | **CIVIL NO.        RDB-23-01720** |
| **CORTEZ WEAVER,** | |
| Defendant. | |

## GOVERNMENT'S RESPONSE TO WEAVER'S MOTION
## TO VACATE PURSUANT TO 28 U.S.C. § 2255

On July 17, 2017, Cortez Weaver murdered Mitch Finney, in broad daylight, as part of a dispute over drug turf at a southwest Baltimore gas station.[1] Two and a half years later, in February 2020, Weaver pleaded guilty to discharging a firearm in furtherance of a drug trafficking crime, resulting in Finney's death, in violation of 18 U.S.C. § 924(j). In Weaver's plea agreement, the parties agreed that a sentence in the range of 25 to 30 years imprisonment was the appropriate disposition of this case. The Court sentenced Weaver to the high end of the agreed-upon range – 30 years – on February 2, 2021.

Throughout this case, Weaver was ably represented by *three* Assistant Federal Public Defenders, one of whom is now a federal judge. Faced with overwhelming evidence of Weaver's guilt – including a recorded confession by Weaver himself, which was corroborated by surveillance footage, ballistics, and text messages – Weaver's counsel negotiated a plea which, as discussed above, capped his exposure at 30 years. They then filed multiple sentencing memoranda

---

[1]     The government summarized the facts pertaining to Finney's murder, in great detail, in its initial sentencing memorandum. *See* ECF 157 at 1-6. To the extent the Court wishes to refresh its memory regarding those facts, both our sentencing memorandum as well as the factual stipulation in Weaver's plea agreement, ECF 117 at 10-12, are incorporated herein by reference.

on Weaver's behalf, in which they vigorously argued that a 25-year sentence was appropriate. Although the Court ultimately disagreed and sentenced Weaver to 30 years, it noted when imposing sentence that had it not been for defense counsel's "excellent representation of [their] client," the Court was inclined to reject Weaver's plea agreement and refuse to abide by the 30-year cap.

In June of this year, Weaver moved to vacate his conviction pursuant to 28 U.S.C. § 2255. Rather than thanking his lawyers for their advocacy on his behalf – which, again, almost certainly spared him from a far harsher sentence than he received – Weaver instead alleges that his three experienced attorneys were ineffective.

Weaver's petition is untimely and utterly lacking in merit. Although a hearing is necessary to fully develop the record as to one of Weaver's claims – that counsel failed to note an appeal after expressly being told to do so – it should nonetheless be clear that there was no constitutional violation, and no ineffective assistance, in this case. Weaver's motion to vacate should be denied.

## **ARGUMENT**

### I. Weaver's Petition is Untimely.

A petition under 28 U.S.C. § 2255 must be filed within one year of the date on which (1) the judgment of conviction became final; (2) the government stopped acting unlawfully to prevent the petitioner from filing; (3) a retroactive right was initially recognized by the Supreme Court; or (4) facts supporting the claim could have been discovered through due diligence. 28 U.S.C. § 2255(f).

Weaver himself acknowledges that on the facts of this case, his petition was due one year after the date on which his conviction became final. ECF 218 at 11. Weaver was sentenced on February 2, 2021. He then had 14 days to appeal his conviction. Weaver's conviction became final on February 16, 2021, when he declined to file a notice of appeal. Thus, Weaver's petition

was due on or before February 16, 2022. He filed his petition over fifteen months later, on June 23, 2023.

Weaver contends that he is entitled to equitable tolling on account of the COVID-19 pandemic and because his counsel "failed to turn over his case file [ ] in a timely manner." ECF 218 at 11. Courts have repeatedly held, however, that a generic invocation of the COVID-19 pandemic is insufficient to warrant equitable tolling. *See*, *e.g.*, *Day v. White*, 2022 WL 4585522 at * 5 n. 9 (E.D. Va. Sept. 29, 2022) ("[T]he COVID-19 pandemic does not automatically warrant equitable tolling for any petitioner who seeks it on that basis. The petitioner must establish that … the COVID-19 pandemic specifically prevented him from filing his motion."); *United States v. Harris*, 2021 WL 1823109 at * 4-5 (E.D. Va. May 6, 2021) (finding that generic claims regarding COVID-19 restrictions did not warrant equitable tolling).

Weaver's second proffered basis for equitable tolling fares no better. None of the claims alleged in Weaver's petition are based in any way on materials or information that were kept within his counsel's file. Weaver did not (and does not) need access to FPD's file to allege that his counsel were ineffective; that his guilty plea was coerced and involuntary; and that he is actually innocent of murdering Maurice Finney. Each of those claims could and should have been raised 15 months ago. For these reasons, Weaver's petition is untimely and must be dismissed.

## II. A Hearing is Necessary to Determine, Among Other Factual Issues, Whether Weaver Unequivocally Instructed his Counsel to File a Notice of Appeal.

Weaver contends that "right after the sentencing hearing" and "within the deadline of 14 days," he instructed his counsel to file a notice of appeal. ECF 218-1 at 1. In an affidavit filed 12 days ago, however, Weaver's counsel stated that to the best of her "knowledge, recollection and belief, Mr. Weaver did not request that I or any member of my Office file a notice of appeal that the Office subsequently failed to file." ECF 231 at 1.

3

Pursuant to the Fourth Circuit's decision in *United States v. Poindexter*, an evidentiary hearing is necessary to determine whether Weaver "unequivocally instructed his attorney to file a notice of appeal." 492 F.3d 263, 273 (4th Cir. 2007). The Court has scheduled such a hearing for October 10, 2023.

If the Court determines during the hearing that Weaver did *not* instruct his counsel to file an appeal, the Court must then determine (i) whether counsel had an obligation to consult with Weaver regarding the filing of an appeal; (ii) whether counsel failed to fulfill his consultation obligations; and (iii) whether Weaver was prejudiced by his counsel's failure to fulfill these obligations. *Id*. The record demonstrates conclusively, however, that counsel did, in fact consult with Weaver and inform him of his appellate rights on February 8, 2021. *See* ECF 231 at 1 (Affidavit by AFPD Grace); ECF 165 (letter by then-AFPD Hurson). The government will ask the Court to make a finding to this effect, and to reject Weaver's argument that his counsel were ineffective for failing to note an appeal, at the evidentiary hearing next month.

### III. The Court Should Not Permit Weaver to Benefit from his Own Decision to Terminate his Video Feed at the Conclusion of the Sentencing Hearing.

Weaver contends that his counsel were ineffective for failing to notify that Court that the video feed was "cut off" towards the end of Weaver's virtual sentencing hearing. ECF 218-1 at 2-3, 8. This audacious claim should be rejected.

The Court held Weaver's sentencing hearing at roughly the height of the COVID-19 pandemic. As a result, the sentencing hearing was a virtual hearing. Weaver participated in the hearing via Zoom video feed from the Northern Neck Regional Jail in Warsaw, Virginia. The hearing proceeded, without interruptions or technical difficulty, until the Court pronounced its sentence (360 months) and began reviewing the standard and mandatory conditions of supervised release. At that point in time – before the Court informed Weaver of his right to file an appeal

4

(which Weaver had waived, in any event, pursuant to his plea agreement) – the Courtroom Deputy informed the Court that "it looks like we may have lost Mr. Weaver from the screen." *See* Ex. 1 at 54 (transcript of sentencing hearing). Within minutes, the Courtroom Deputy reported that he had "just received word from the facility that [Weaver] intentionally disconnected and doesn't want to come back to the hearing room." *Id*. at 57.

Under these circumstances, Weaver has no one but himself to blame for his absence from the final minute or two of the sentencing hearing. The fact of the matter is that Weaver had a temper tantrum, terminated the Zoom connection, and stormed out of the hearing room upon learning that the Court had sentenced him to 360 months. It would be absurd to hold such obstreperous conduct amounts to a constitutional violation on the ground of ineffective assistance. Here again, Weaver was the wrongdoer, not a victim.

Further, and in any event, the record establishes that the Court was well aware that Weaver's video feed had been disconnected. *See* Ex. 2 at 57-60. Upon learning that the feed had been terminated, the Court instructed defense counsel to follow up with Weaver and inform him of his appellate rights, as well as his obligation to pay a $100 special assessment. Counsel covered both issues during a video visit with Weaver within a week. *See* ECF 165 (letter from then AFPD Hurson); ECF 231 (affidavit by AFPD Grace). There was no ineffective assistance on these facts.

**IV. Weaver's "Jurisdictional" Argument Should be Disregarded Because it Makes No Sense.**

Weaver pleaded guilty to Count Two of the superseding indictment, which charged him with possessing, brandishing, and discharging a firearm in furtherance of a drug trafficking conspiracy, resulting in the death of Maurice Finney, in violation of 18 U.S.C. §§ 924(c) and (j). *See* ECF 117 (plea agreement). At the time of his guilty plea, Weaver was also charged with three other crimes: conspiracy to distribute and possess with intent to distribute over a kilogram

5

of heroin (Count One); conspiracy to commit Hobbs Act robbery (Count Three); and possession of a firearm in furtherance of a drug trafficking crime (Count Four). ECF 71-1.

In his motion to vacate, Weaver appears to argue that if he had not pleaded guilty to Count Two, he could have successfully challenged Counts Three and Four, on the ground that Hobbs Act conspiracy is no longer a valid predicate offense for purposes of § 924(c). ECF 218-1 at 4. Weaver fails to recognize, however, that the predicate offense for Count Four was *not* the Hobbs Act conspiracy charged in Count Three, but rather the drug trafficking conspiracy charged in Count One. ECF 71-1. Accordingly, while the judicial dismantlement of § 924(c)'s residual clause may provide a windfall to other defendants, it is of no help to Weaver in this case. This is true not only with respect to Count Four, but also with respect to Count Two (the actual count of conviction), which Weaver at least arguably appears to challenge on similar grounds. ECF 218-1 at 4-5.

In short, Weaver's "jurisdictional" argument cannot support an ineffective assistance claim because it is based upon a misstatement – indeed, multiple misstatements – of the law. The argument should therefore be rejected.

V. **The Court Should Reject Weaver's Claims That He Was Coerced Into Pleading Guilty, That Counsel Should Have Negotiated A Better Plea, and That He is Actually Innocent of Murdering Maurice Finney**

"Allegations in a § 2255 motion that directly contradict a petitioner's sworn statements following a Rule 11 colloquy are always 'palpably incredible' and 'patently frivolous or false.'" *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005); *see also id.* (a defendant's "solemn declarations in open court affirming [a] plea agreement … carry a strong presumption of veracity"). Thus, absent extraordinary circumstances, "the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an

6

evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id*.

During his guilty plea colloquy in February 2020, Weaver admitted that he was satisfied with the representation of his counsel. Ex. 1 at 10-11 (transcript of rearraignment). He acknowledged that he had spoken with his counsel about the case, the evidence against him, and the possibility of a trial. *Id*. at 10. Asked whether there was anything he had asked counsel to do "which they ha[d] not done," Weaver responded, "No." *Id*. at 11.

Later during the same proceeding, the Court asked Weaver, "has anyone in any way tried to force you or threaten to plead guilty in this case?" *Id*. at 13. Weaver again responded, "No." The Court followed up: "Are you pleading guilty on your own freely because you're in fact guilty?" *Id*. Weaver answered, "Yes." *Id*.

Towards the end of the Rule 11 hearing, the government proffered a lengthy summary of the factual stipulation in Weaver's plea agreement. *Id*. at 27-32. The government explained that Weaver had admitted to murdering Maurice Finney and attempting to murder a second victim in July 2017. *Id*. at 28. The government summarized, in detail, the evidence that Weaver had murdered Finney, including video surveillance footage; a text message from Weaver to his accomplice, in which Weaver instructed the accomplice to "burn them clothes"; and Weaver's own confession to an FBI confidential source. *Id*. at 28-29. The government then explained that nearly two years later, Weaver was arrested with a firearm after plotting to rob a stash house during recorded conversations with an undercover Baltimore police officer. *Id*. at 29-31.

When the government's proffer was over, the Court and Weaver had the following exchange:

> THE COURT: Mr. Weaver, is that an accurate summary of the facts of this case?
> WEAVER: Yes.

7

| | | |
|---|---|---|
| THE COURT: | | Did you in fact commit the crime as summarized by the government? |
| WEAVER: | | Yes. |
| THE COURT: | | Do you still wish to plead guilty, sir? |
| WEAVER: | | Yes. |

*Id*. at 32-33.

Weaver now claims, in the face of these sworn statements, that he is actually innocent of Finney's murder; that his counsel coerced him into pleading guilty; and that his counsel were ineffective for failing to negotiate a better deal. Under the Fourth Circuit's holding in *Lemaster*, the Court should reject Weaver's allegations as "palpably incredible" and "patently frivolous and false." 403 F.3d at 221. Indeed, that is exactly what they are. Weaver signed a plea letter in which he agreed that he *confessed* to Finney's murder, and that his confession was corroborated by surveillance footage, ballistics, and text messages. *See* ECF 117 at 10-12. In light of those admissions, Weaver's protestation that he "had nothing to do with Finney's murder" is absurd. Weaver pleaded guilty because he was guilty, as he himself admitted - under oath - during a Rule 11 colloquy over three years ago. Any suggestion otherwise is false.

This was not a case in which defense counsel forced an innocent defendant to plead guilty on unfavorable terms. To the contrary, as AFPD Grace aptly noted in her 2022 letter to Weaver – which Weaver has attached to his petition as an exhibit – defense counsel "fought the government hard." *See* ECF 218-2 at 3. Indeed, as the Court itself acknowledged towards the end of Weaver's sentencing hearing, had it not been for defense counsel's "excellent representation" of Weaver in this case, the Court might not have agreed "to abide by the 30 year cap" set forth in paragraph 10 (the Rule 11(c)(1)(C) provision) of Weaver's plea agreement. Ex. 2 at 61. That is the very opposite of "deficient performance" and "prejudice," as those terms are used in *Strickland v.*

*Washington*, 466 U.S. 668 (1984). Put simply, there was no ineffective assistance, and no constitutional violation, in this case.

## **CONCLUSION**

For all of the foregoing reasons, Weaver's motion to vacate should be denied. The government looks forward to expanding on the arguments presented in this submission, and to answering any questions the Court may have, during the evidentiary hearing on October 10.

Respectfully submitted,

EREK L. BARRON
United States Attorney

By: _____/s/_____
Peter J. Martinez
Assistant United States Attorney
36 South Charles Street
Baltimore, Maryland 21201
(410) 209-4800

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on September 27, 2023, a copy of the foregoing submission was sent by certified mail to the defendant at the following address:

Cortez Weaver, Inmate No. 64583-037
USP-Hazelton
1640 Sky View Drive
Bruceton Mills, WV 26525

By:_____/s/_____

Peter J. Martinez
Assistant United States Attorney